# United States District Court
# Central District of California

| | |
|---|---|
| SERAFIN MENDEZ, <br><br> Plaintiff, <br><br> v. <br><br> SELENE FINANCE LP; THE WOLF FIRM; and DOES 1–100, inclusive, <br><br> Defendants. | Case № 2:16-cv-09335-ODW (FFM) <br><br> **ORDER GRANTING PLAINTIFF'S MOTION TO AMEND [27] AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [23]** |

## I. INTRODUCTION

Plaintiff Serafin Mendez filed this action seeking to halt the foreclosure of his home. Before the Court is Plaintiff's motion to amend the first amended complaint to add M&T Bank as a defendant. (ECF No. 27.) Also before the Court is Defendants Selene Finance LP ("Selene") and The Wolf Firm's motion to dismiss Plaintiff's first amended complaint for failure to state a claim pursuant Federal Rule of Civil Procedure 12(b)(6). (ECF No. 23.) The Court **GRANTS** Plaintiff's motion and **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

## II. FACTUAL BACKGROUND

### A. Facts

As both parties are familiar with the facts, the Court includes only those facts necessary to resolve the pending motions. On February 20, 2013, Plaintiff purchased property located in Lancaster, California. (First Amended Complaint ("FAC") ¶¶ 1, 13, ECF No. 20.) To finance his purchase, Plaintiff obtained a loan from Pacificbanc Mortgage. (*Id.* ¶ 14.) At some point after the purchase, Plaintiff's mortgage note was assigned to M&T Bank. (*Id.* ¶ 15.) M&T Bank then transferred the servicing rights to Seneca Mortgage LLC ("Seneca"). (*Id.* ¶ 16.)

Plaintiff fell behind on his mortgage payments, and on September 17, 2014, The Wolf Firm, acting at Seneca's behest, recorded a notice of default on the property indicating that Plaintiff was behind on his payments by $32,347.67. (*Id.* ¶ 23, Ex. B.) Plaintiff submitted payments totaling $23,327.49 to Seneca "sometime in the end of 2014." (*Id.* ¶¶ 20, 31.) As of the "last mortgage statements" Plaintiff received, these payments had not been credited to his account. (*Id.* ¶ 21.) On August 20, 2015, The Wolf Firm, again acting on behalf of Seneca, recorded a notice of sale on the property. (*Id.* ¶ 24.) "On or about October 2016," M&T Bank transferred the servicing rights for Plaintiff's loan to Selene. (*Id.* ¶¶ 16, 25.)

### B. Procedural History

On November 17, 2016, Plaintiff filed a complaint against Defendants in the Superior Court of California, County of Los Angeles, alleging: (1) negligence; (2) violation of California Civil Code section 2923.6; (3) entitlement to an accounting; and (4) violation of California Business and Professions Code section 17200. (Compl. ¶¶ 21–47, ECF No. 1-1.) On December 19, 2016, Defendants removed the case to federal court. (ECF No. 1.)

On December 27, 2016, Defendants filed a motion to dismiss Plaintiff's complaint. (ECF No. 7.) On February 7, 2017, the Court granted Defendants' motion in its entirety. (ECF No. 16.) The Court gave Plaintiff leave to amend his claim for

violation of California's Unfair Competition Law ("UCL") and also gave Plaintiff leave to amend his claim for negligence to the extent that it was based on a failure to credit his previous payments of $23,327.49.[1] (Order 8, 12.)

On March 9, 2017, Plaintiff filed a first amended complaint alleging three causes of action: (1) negligence; (2) declaratory relief; and (3) violation of the UCL. (FAC ¶¶ 27–54.) On March 22, 2017, Defendants filed a Rule 12(b)(6) motion to dismiss Plaintiff's first amended complaint. (ECF No. 23.) On April 13, 2017, Plaintiff filed a motion to amend the first amended complaint to add M&T Bank as a defendant. (ECF No. 27.) The motions are now fully briefed and ready for decision. (ECF Nos. 26[2], 29.)[3]

### III. LEGAL STANDARD

**A. Motion to Amend Complaint Pursuant to Rule 15(a)(2)**

Leave to amend a complaint should be "freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). In determining whether leave to amend should be granted, four factors are considered: (1) undue delay; (2) bad faith or dilatory motive; (3) prejudice to the opposing party; and (4) futility of amendment. *Ditto v. McCurdy,* 510 F.3d 1070, 1079 (9th Cir. 2007); *Foman v. Davis,* 371 U.S. 178, 182 (1962).

**B. Motion to Dismiss Pursuant to Rule 12(b)(6)**

A party may seek to dismiss a complaint pursuant to Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the

---

[1] The Court previously considered and dismissed without leave to amend Plaintiff's negligence claim as it related to his alleged attempts to obtain a mortgage modification. (Order 8, ECF No. 16.) As such, the Court will not consider that theory of negligence again in this order.

[2] Defendant requests that the Court "disregard" Plaintiff's late-filed opposition. (Reply 2, ECF No. 29.) The Court will not do so as Defendant has not alleged any resulting prejudice from the late filing.

[3] After considering the papers filed in connection with these motions, the Court deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).

## IV. DISCUSSION

### A. Motion to Amend Complaint

Plaintiff moves to amend the complaint after omitting Defendant M&T Bank from the caption. (Mot. to Amend 3, ECF No. 27.) As the body of the first amended complaint lists M&T Bank as a defendant, it is clear that M&T Bank's omission from the caption was merely an oversight by Plaintiff's counsel, who admits as much in her declaration supporting the motion to amend. (FAC ¶ 4; Danielyan Decl. ¶ 4, ECF No. 27.) Therefore, the Court finds that the omission was not in bad faith. Further, adding M&T Bank as a party has not and will cause undue delay to Defendants. While the Court pushed back the hearing on Defendants' motion to dismiss by two weeks to allow for the potential of a simultaneous hearing on the motion to dismiss and the motion to amend, this short delay cannot be considered "undue." (*See* ECF No. 30.) Moreover, the addition of M&T Bank at this early stage of the lawsuit will not have any prejudicial effect on Defendants' respective cases. Finally, to date, Defendants

have not filed an opposition to Plaintiff's motion.[4] Accordingly, the Court **GRANTS** Plaintiff's motion to amend the complaint to add M&T Bank as a defendant.

**B. Motion to Dismiss**

    **1. Negligence**

        **a. Plaintiff's Arguments**

Plaintiff argues that he has stated a claim for negligence based on Selene's failure to credit his $23,327.49 in payments "towards [his] loan amount," or alternatively, based on Selene's failure to "properly review his loan account to credit the payments made." (FAC ¶¶ 32–33.) In support of his argument, Plaintiff points to *Mahoney v. Bank of America, National Association*, No. 13-CV-2530-W JMA, 2014 WL 2197068 (S.D. Cal. May 27, 2014), in which a motion to dismiss for negligence was denied where a subsequent servicer failed to accurately account for a payment made to the previous servicer. The plaintiffs in *Mahoney* made a $50,000 payment to Bank of America, the then servicer of their mortgage. 2014 WL 2197068, at *2. After much back and forth with Bank of America, the plaintiffs remained unclear whether the $50,000 payment had been properly applied to their account. *Id.* In an attempt to sort out once and for all whether the $50,000 payment had been properly applied to their account, the plaintiffs submitted a qualified written request ("QWR") to Bank of America. *Id.* At that point, servicing rights for the loan were transferred to Nationstar Mortgage. Nationstar Mortgage failed to provide accurate "reinstatement amount[s]" or complete and accurate information in response to the QWR as to whether the $50,000 payment had been credited to the plaintiffs' account. *Id.* at *3. The plaintiffs then filed suit, alleging negligence, among other causes of action, against Bank of America and Nationstar Mortgage. *Id.* The court found that the allegations contained in the complaint were sufficient to state a claim for negligence

---

[4] Defendants' opposition was due on April 24, 2017, twenty-one days before the May 15, 2017 hearing on the motion. C.D. Cal. L.R. 7-9.

as to both Bank of America, the original servicer, and Nationstar Mortgage, the subsequent servicer. *Id.* at *7.

Plaintiff also points to *Hampton v. U.S. Bank, National Association*, No. CV 12-06713 DMG PJWX, 2013 WL 8115424 (C.D. Cal. May 7, 2013). In *Hampton*, servicer JP Morgan "requested" a $20,000 payment from the plaintiff to "cure" her default and then failed to credit that payment to the plaintiff's account. 2013 WL 8115424, at *1. The court applied the six-factor test in *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991) and found that JP Morgan owed a duty of care to the plaintiff to properly credit her payment. *Id.* at *3–4. Plaintiff argues that the Court should follow these cases and allow a negligence claim based on Selene's failure to properly credit his payments. (Opp'n 8, ECF No. 26.)

### b. Defendant's arguments

Selene argues that *Mahoney* and *Hampton* are distinguishable from the present case. (Reply 4–5.) Selene points out that the servicers in those cases made affirmative representations to their respective borrowers and operated outside of their traditional servicer role, thus exposing themselves to potential negligence liability, whereas here, Selene operated entirely within its traditional servicer role. (*Id.* at 5.)

Selene also argues that under the mortgage contract, the previous servicer was not obligated to accept partial payment and that the $23,327.49 payment amounted to a partial payment of the $32,347.67 necessary for reinstatement. (FAC, Ex. A, ¶ 9; Mot. to Dismiss 4, ECF No. 23.) Selene then argues that because there was no duty to accept such a payment[5], it cannot be held liable in negligence for not doing so. (*Id.*)

### c. Analysis

Plaintiff finds himself in a difficult position. He allegedly paid $23,327.49 to Seneca in an attempt to remedy missed mortgage payments and to prevent foreclosure, only to find that his payment had not been credited to his account. (*See* FAC ¶¶ 20–

---

[5] In the interest of improved readability, the Court refers to Plaintiff's payments totaling $23,327.49 as a single payment for the remainder of the decision.

21, 31–32.) The foreclosure process then continued unabated despite his payment. (*Id.* ¶ 24.) When servicing rights for the loan were transferred to Selene, Plaintiff could not sue Seneca to enjoin foreclosure for the misapplication of his payment because Seneca no longer had the ability to halt the foreclosure process. Instead, he was left to sue Selene, the present servicer, to halt the foreclosure of his home.

The Court previously dismissed Plaintiff's negligence claim as to the $23,327.49 payment because Plaintiff had not alleged a connection between Selene and the misapplication of his payment—it appeared that the bad act was entirely Seneca's doing and that Selene had no legally cognizable relationship to Seneca. (Order 8.) However, Plaintiff now alleges in his first amended complaint that Selene was involved; it "failed to credit [his] payments toward the loan amount" and "did not properly review his loan account to credit the payments made." (FAC ¶ 32–33.)

As a starting point for its analysis, the Court feels it is necessary to recognize the seriousness of the allegations in Plaintiff's first amended complaint. Without mincing words, Plaintiff appears to allege that $23,327.49 was stolen from him. (*See* Opp'n 9 (indicating that "the payments [at issue], were in fact, accepted")); *see also Mertan v. Am. Home Mortg. Servicing, Inc.*, No. SACV 09-723 DOC, 2009 WL 3296698, at *5 (C.D. Cal. Oct. 13, 2009) ("To the extent Plaintiffs paid money to [their servicer], and [their servicer] failed to properly credit their account and deemed them late on their monthly payments (subjecting Plaintiffs to impending foreclosure), the Court is gravely concerned.").

This type of activity does not occur absent negligent or intentional conduct. Therefore, it should hardly be surprising that application of the *Nymark* test compels a finding of duty in this case. In determining whether a lender or servicer owes a duty to a borrower, the *Nymark* test requires courts to balance six factors: (1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to the plaintiff; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury

suffered; (5) the moral blame attached to the defendant's conduct; and (6) the policy of preventing future harm. 231 Cal. App. 3d at 1098.

The Court addresses each factor in turn. First, Plaintiff's payment was designed to keep his home from being foreclosed; therefore, any failure to credit that payment clearly had the potential to affect Plaintiff. Second, it is entirely foreseeable that failure to credit such a payment to Plaintiff's account would cause him harm. Plaintiff was behind on his mortgage payments and likely hoped that by making this payment he might be able to reinstate his loan. By failing to credit his payment, Selene has left Plaintiff in a state of financial uncertainty, unsure of how much he owes on his loan. Third, the current allegations leave no room for doubt as to the injury. Plaintiff alleges that he "submitted payments" to his previous servicer "totaling approximately $23,327.49" and that Selene, his current servicer, failed to credit those payments. (FAC ¶¶ 31–32.)

The Court also finds that the moral blame and the policy of preventing future harm factors weigh in Plaintiff's favor. Plaintiff made the payment at issue after experiencing a period of "financial difficulty" during which he lost his job. (*Id.* ¶ 18.) By tendering the payment, Plaintiff was trying to make good on his debt and save his home. However, far from saving his home, the payment seems to have vanished into thin air—neither Selene, nor M&T Bank, nor Seneca, ever credited the payment to his account.

This is obviously not the type of behavior that should be validated or encouraged. As the holdings of *Mahoney* and *Hampton* reinforce, servicers should be held responsible for failing to properly credit borrowers' payments. 2014 WL 2197068, at *7; 2013 WL 8115424, at *4. As at least five of the six *Nymark* factors favor Plaintiff, the Court finds that a duty should attach and that Plaintiff has stated a claim for negligence.[6]

---

[6] As five of the six factors weigh in Plaintiff's favor, the Court declines to analyze the fourth factor.

8

In reaching its decision, the Court has considered Selene's argument that servicers are required to act outside of their traditional role for negligence liability to attach. (*See* Reply 5.) However, the Court finds that the defining line as to what falls inside and outside of servicer's traditional role is hopelessly blurred and that this distinction should not function to overcome underlying facts evincing strong signs of negligent conduct.

Courts such as *Mahoney* and *Hampton* seem to implicitly agree with this view. In *Mahoney*, for instance, the court found that servicer Nationstar Mortgage's activities fell outside of the traditional servicer role where it provided inaccurate reinstatement amounts and a QWR response that failed to account for the plaintiff's previous $50,000 payment. 2014 WL 2197068, at *2, *7. The court made this finding despite the fact that providing a reinstatement amount or responding to a QWR falls squarely within a servicer's traditional role. Indeed, responding to a QWR is explicitly required of servicers by law under the Real Estate Settlement Procedures Act. *See* 12 C.F.R. § 1024.36 (describing servicer obligations as to QWRs). Likewise, in *Hampton*, the Court found that a servicer's reinstatement request took the servicer outside of its traditional role—even though it is clear that accounting for missed payments from borrowers and issues of loss mitigation are core servicing activities. 2013 WL 8115424, at *1, *3–4; *see also* 12 C.F.R. § 1024.38 (describing servicer obligations regarding loss mitigation). The takeaway from these cases is that courts have redefined traditional servicing activities as falling outside the traditional servicing role when necessary to protect borrowers from overtly negligent activity and avoid manifest injustice. In essence, courts will not stand by and allow borrowers to be victimized by a servicer's overtly negligent conduct, such as a failure to properly process and apply payments, merely because that conduct falls within the sphere of traditional servicing activities.

To find otherwise in this case and others like it would lead to absurd results. Servicers would be able to lose or carelessly process incoming borrower payments,

record notices of default based on not having received those payments, and then subsequently move to foreclose based on those same missed payments—all while remaining shielded from negligence liability based on their participation in an activity, the processing of payments, that falls within their traditional role. Maintaining such a policy is not prudent.

Lastly, the Court has considered Selene's argument regarding partial payment. While Selene may be correct that it does not have to accept partial payment under the contract, the first complaint and attached exhibits do not make it clear whether the payment of $23,327.49, at the time it was made, amounted to a partial payment or a full payment. Although approximately $32,347.67 was necessary to reinstate the loan on September 14, 2015, this total may have been different at the "end of the year" when Plaintiff made the relevant payment. (*Compare* FAC ¶ 20 *with* FAC, Ex. B; *see also* Opp'n 9.) Selene's argument is also premised on an understanding that the previous servicer "rejected" Plaintiff's $23,327.49 payment. (*See* Mot. 1.) However, the allegations contained in the first amended complaint provide no support for this understanding. Indeed, in the context of Plaintiff's declaratory relief claim, he specifically requests that the Court make a determination of "which Defendant is responsible for not crediting the amounts *paid*." (*Id.* ¶ 46 (emphasis added).) Further, Plaintiff's opposition repeatedly emphasizes that his payment was "accepted." (Opp'n 9.)

After carefully considering the facts in the first amended complaint and the parties' arguments, the Court finds that discovery is warranted to determine exactly what happened to Plaintiff's $23,327.49 payment. While it may turn out that Plaintiff's payment was credited to his account or that Plaintiff's payment was returned to him, the Court will not allow Plaintiff to be evicted from his home without additional clarification. Accordingly, the Court **DENIES** Defendants' motion to dismiss as to Plaintiff's negligence claim.

///

**2. Declaratory Relief**

Plaintiff also alleges a claim for declaratory relief. (FAC ¶¶ 39–47.) As stated in the previous section, Plaintiff requests that the Court determine "which Defendant is responsible for not crediting the amounts paid." (*Id.* ¶ 46.) The Court finds that this claim is duplicative of Plaintiff's claim for negligence. As Plaintiff's negligence claim remains and responsibility for not crediting the payments will be determined in that context, a separate declaratory relief claim is not necessary.[7] *Glendora Courtyard, LLC v. BBVA Compass Bancshares Inc.*, No. 16-CV-1189-JLS-KSC, 2017 WL 960431, at *8 (S.D. Cal. Mar. 13, 2017) ("A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action.") (quoting *Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 707–08 (N.D. Cal. 2009)). Further, as a general matter, "declaratory and injunctive relief are not causes of action; rather, they are remedies." *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010); *Hampton*, 2013 WL 8115424, at *5. Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's declaratory relief claim without leave to amend.

**3. Violation of the UCL**

Plaintiff's final claim is for violation of the UCL. (FAC ¶¶ 48–54.) To state a claim under the UCL, a plaintiff must allege an "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Because [the UCL] is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230, 252 (2011) (quoting *Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638, 643–44 (2008)).

A business practice violates the unlawful prong where there is some other related violation of law. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th

---

[7] The Court notes that one of Plaintiff's requested forms of relief is an accounting. (*See* Prayer for Relief, ECF No. 20.)

1134, 1143 (2003); *see also Multimedia Patent Trust v. Microsoft Corp.*, 525 F. Supp. 2d 1200, 1217 (S.D. Cal. 2007) ("[A]n 'unlawful' business act or practice is one that is prohibited by law, where possible sources of law are defined broadly.").

A business practice violates the unfair prong "where it either offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous[,] or substantially injurious to consumers." *Harris v. Wells Fargo Bank N.A.*, No. 516CV00645CASK KX, 2016 WL 3410161, at *4 (C.D. Cal. June 15, 2016). To allege a violation under the unfair prong, the plaintiff must "tether[]" the unfair practice or policy to a specific constitutional, statutory, or regulatory provision. *Id.*; *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 967 (N.D. Cal. 2015); *Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1192 (2012).

A business practice violates the fraud prong where it would likely be seen as deceptive by "members of the public." *Stewart*, 81 F. Supp. 3d at 968. Fraud-based UCL claims are also subject to the heightened Rule 9(b) pleading standard. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

Plaintiff has not clearly identified the prong on which his UCL claim is based. Therefore, the Court analyzes the sufficiency of his allegations under each of the three prongs. To begin, Plaintiff cannot establish a UCL claim under the unlawful prong. Plaintiff's sole remaining claim is for negligence. Common law claims such as negligence cannot form the basis of an unlawful prong claim under the UCL. *See R. N. Beach, Inc. v. Country Visions, Inc.*, No. 215CV02014TLNCKD, 2016 WL 1682046, at *8 (E.D. Cal. Apr. 27, 2016) (citing *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010)); *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1150 (N.D. Cal. 2010) ("Plaintiffs' negligence . . . claim[] may not constitute [a] predicate act[] for a UCL claim.").

Plaintiff's UCL claim fails under the unfair prong for the same reason it failed previously: it is not "tethered" to a *specific* constitutional, statutory, or regulatory provision. *See Harris*, 2016 WL 3410161, at *4 (denying plaintiffs' unfair prong

claim where they failed to allege any "*specific* constitutional, statutory[,] or regulatory provision."). Finally, Plaintiff has not put forth any allegations or arguments relevant to the fraud prong. Accordingly, the Court **GRANTS** Defendants' motion to dismiss as to Plaintiff's UCL claim. As this is the second time the Court has dismissed Plaintiff's UCL claim, the dismissal is without leave to amend.

## V. CONCLUSION

In light of the foregoing, the Court **GRANTS** Plaintiff's motion to amend the complaint. (ECF No. 27.) The Court also **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss. (ECF No. 23.) Plaintiff's claim for negligence survives, while Plaintiff's claims for declaratory relief and violation of the UCL are dismissed without leave to amend.

**IT IS SO ORDERED.**

April 27, 2017

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**